# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1062

_____

United States of America,

        Appellee,

    v.

Eric Lamont Williams,

        Appellant.

_____

No. 05-1074

_____

United States of America,

        Appellee,

    v.

Gregory Caldwell,

    Appellant.

*
*
*
*
*
*
*
*
*
*
*
*
*

Appeals from the United States
District Court for the
Eastern District of Arkansas.

*
*
*
*
*
*
*
*
*

_____

Submitted: June 23, 2005
Filed: November 17, 2005

_____

Before ARNOLD, MCMILLIAN and COLLOTON, Circuit Judges.

McMILLIAN, Circuit Judge.

Eric Lamont Williams and Gregory Caldwell appeal from final judgments entered upon jury verdicts finding them guilty of conspiring to possess with intent to distribute and possession with intent to distribute marijuana and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. For reversal, Williams argues that the district court erred in denying his motions to suppress his statement and to sever his trial. Caldwell argues that the district court erred in denying his motion to suppress his statements and the evidence seized from his vehicle. Both appellants argue that the district court erred in allowing the government to amend the indictments at trial. We affirm in part and reverse in part and remand the case with directions.

## I. BACKGROUND

In October 2002, members of a DEA task force operating in Pine Bluff, Arkansas, received information that Williams would be transporting drugs from Los Angeles, California to Little Rock, Arkansas. The DEA set up surveillance to track his movements. Williams was picked up at the airport in Little Rock and driven to the Horizon Inn in Pine Bluff, Arkansas, where he was seen entering room 127. The next day he went to a hair salon at 401 N. Myrtle Avenue in Pine Bluff, a location at which a significant number of persons were observed entering and leaving again within minutes. Williams was picked up and driven to numerous locations in Pine Bluff, as well as making a round trip to Stuttgart, Arkansas. In Stuttgart, the police observed Williams stop at a residence and then at a business. At the latter he was seen talking with Caldwell.

Later Williams was seen again in Pine Bluff at 403 N. Myrtle Avenue, a residence next to the hair salon. Vehicles would pull up to the residence, Williams would come out to talk, and then the vehicles would leave. One of the vehicles was a green Ford Focus occupied by Caldwell and several unidentified passengers.

Williams was observed retrieving a package from an apparently inoperable vehicle and handing the package Caldwell. Williams and a female then got into Caldwell's car and were driven to the Horizon Inn, where Williams and Caldwell entered room 127. When they exited the room and returned to the car, Williams was observed handing a package to a passenger in the front seat of the Focus before entering the vehicle himself. The car the left the hotel and made a stop at Second and Orange in Pine Bluff before continuing on.

Suspecting that drugs might be in the car, Officer Kelvin Sergeant made a radio request that the Focus be stopped if probable cause could be established to stop the vehicle. The only information transmitted was that there might be controlled substances in the car. A Pine Bluff police officer stopped the car because it was going too slowly (30-35 miles per hour in a forty-five miles per hour zone) and because the driver had crossed over the center line while approaching a curve. The officers called for a drug dog, which arrived approximately five to six minutes later and alerted to two locations in the car. Marijuana and crack cocaine were found, and Caldwell was arrested. Williams was no longer in the car when it was stopped.

Based on statements made by Caldwell after his arrest, the police obtained a search warrant for room 127 at the Horizon Inn. They found crack cocaine and marijuana and a California driver's license for Eric Williams. While the search was in progress, Williams arrived in a car driven by Aaron Dancy. Williams identified himself as Eric Dancy before being confronted with the California driver's license. Marijuana was found in a backpack in the car, and both Williams and Dancy were arrested, as was Tamika Ingram, another occupant of the room. Williams and Dancy each gave statements. Caldwell gave a second statement. Williams, Caldwell, Dancy and Ingram were indicted on conspiracy and drug possession charges.

Williams moved to suppress his statement on the ground that he was improperly advised of his rights in violation of Miranda v. Arizona, 384 U.S. 436

(1966), that there was no written waiver of his rights, that he did not sign his statement, and the statement was not tape-recorded. He claimed that the statement was not an accurate rendition of what he actually said, and requested that the government turn over the rough notes of the interrogation.

Williams also moved for severance of his trial from that of his co-defendants. He contended that his Sixth Amendment right to confront the witnesses against him would be violated by the admission of his non-testifying co-defendants' statements, which he argued could not be redacted in a way that would remove their prejudicial impact.

Caldwell moved to suppress his statements and the evidence taken from his car, alleging that the stop violated the Fourth Amendment. He alleged that there was no probable cause for the stop, that it was purely pretextual, and that he was unlawfully detained to await the arrival of a drug-sniffing dog. He also made a Miranda claim as to a portion of his statements.[1]

After hearings on the motions, the district court found that there was probable cause for the traffic stop and that the defendants had been properly Mirandized before making their statements. The district court also reviewed the rough notes of Williams's interrogation, found no material differences with the statement, and denied Williams access to them. The district court also denied Williams's severance motion.

Williams, Caldwell and Dancy were tried together. Over renewed motions and strenuous and continued objections, Caldwell's redacted statement was read to the jury. After Dancy's redacted statement was read to the jury, Dancy testified in his own defense, incriminating Williams. The district court denied Williams's renewed motion for severance.

---

[1] Caldwell does not pursue his Miranda claim on appeal.

On the third day of trial, the prosecution discovered a problem with the possession counts of the indictment. Count 4 charged that Caldwell "knowingly and intentionally possessed approximately 18.1 grams of crack cocaine, a Schedule II controlled substance" in violation of Title 21 U.S.C. § 841(a)(1). Count 5 charged that Williams "knowingly and intentionally possessed approximately 25.2 grams of crack cocaine, a Schedule II controlled substance" in violation of 21 U.S.C. § 841(a)(1). Although the statute cited in each count was the correct one for possession with intent to distribute, the indicting language failed to allege the element that the possession was with intent to distribute. The related conspiracy counts contained the intent to distribute element, but the possession counts did not. The district court determined that the omission was mere oversight or typographical error and that there was no surprise or Fifth Amendment violation, and amended the counts to add the missing element. The jury was instructed accordingly and the defendants were convicted on all counts.

## II. DISCUSSION

A. Suppression

"We review the denial of a motion to suppress de novo, but review the underlying factual determinations for clear error, giving due weight to the inferences of the district court and law-enforcement officials." United States v. Coleman, 349 F.3d 1077, 1083 (8th Cir.2003), cert. denied, 541 U.S. 1080 (2004). A district court's credibility determinations are entitled to great deference on review. United States v. Gregory, 302 F.3d 805, 811 (8th Cir. 2002), cert. denied 538 U.S. 992 (2003).

1. Caldwell

Caldwell argues that the drugs found within the car and the statements he made thereafter should have been suppressed as the fruits of an illegal stop of his vehicle. He contends that the district court erred in finding that there was probable cause to stop his vehicle, because there was no proof that any traffic violations actually occurred, and that the traffic stop was simply a pretext to search the car because the DEA "thought" there might be drugs inside. He argues that the DEA had insufficient information to establish reasonable suspicion for the stop of his vehicle, and that whatever no information was communicated to the officer who made the stop. Caldwell further claims that he was unlawfully detained for a dog sniff of his vehicle.

It is well established that even a minor traffic violation provides probable cause for a traffic stop. United States v. Barragan, 379 F.3d 524, 528 (8th Cir. 2004). The subjective belief of the officer that there might be illegal drugs in the vehicle does not invalidate the stop. United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004). Thus, "a traffic-violation arrest . . . would not be rendered invalid by the fact that it was a 'mere pretext for a narcotics search.'" Whren v. United States, 517 U.S. 806, 812-13 (1996)(quoting United States v. Robinson, 414 U.S. 218, 221 n. 1 (1973)).

Applying these standards of review to our consideration of the record, we hold that the district court's finding that there were in fact traffic violations is supported by the evidence, and thus there was probable cause for the stop of Caldwell's vehicle. In the alternative, we also hold that the collective knowledge of the DEA team was sufficient to provide reasonable suspicion to stop Caldwell's vehicle, and such knowledge was imputed to the officer at the scene when he received Sgt. Sergeant's radioed request. See United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir. 2001) (collective knowledge imputed to arresting officer when there is some degree of communication).

The use of the drug-sniffing dog on the exterior of a vehicle during a valid traffic stop does not infringe upon any Fourth Amendment rights. Illinois v. Caballes,125 S.Ct 834, 837-838 (2005). Because the dog sniff of the exterior of Caldwell's car was not a search, the officer did not need probable cause nor reasonable suspicion before calling for the drug dog unit. See United States v. Gregory, 302 F.3d at 810. Moreover, the brief five to six minute wait for the drug-sniffing dog is well within the time frame for finding that the stop was not unreasonably prolonged. See United States v. White, 42 F.3d 457, 460 (8th Cir. 1994) (eighty-minute wait reasonable); United States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994) (en banc) (one-hour detention permissible).

2.Williams

The district court credited the testimony of the government witnesses that the Miranda warnings were given and Williams waived them. As Williams concedes, there is no evidence in the record upon which to disturb this finding.

Williams wants this Court to determine that the police failure to utilize a written waiver form and tape-recording equipment was a bad faith denial of his Fifth Amendment rights, and asks that we fashion a rule mandating their use in formal interrogation settings. We decline to do so. While several states have so legislated, there is no indication that such laws are constitutionally required. See United States v. Montgomery, 390 F.3d 1013, 1017 (7th Cir. 2004); see also Jenner v. Smith, 982 F.2d 329, 331 n.2 (8th Cir. 1993) (noting that several other circuits have held that in federal criminal cases, the failure of the police to electronically record or take notes of incriminating statements does not render the statements inadmissible).

The district court reviewed the handwritten notes taken during Williams's interrogation and found that they did not materially differ from the statement attributed to Williams. This Court has also reviewed the notes and agrees with the District Court. Thus any error in keeping the notes from Williams would be harmless.

B. Severance

The district court denied Williams's motion to sever his trial from that of his co-defendants. We review a district court's denial of severance abuse of discretion. United States v. Blaylock, 421 F.3d 758, 766 (8th Cir. 2005). Generally, persons charged with conspiracy should be tried together, particularly in cases such as this "where proof of the charges against the defendants is based upon the same evidence and acts." Id.

1. From Caldwell

In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that a co-defendant's statement that facially incriminates a defendant violates the Confrontation Clause despite cautionary instructions. In Richardson v. Marsh, 481 U.S. 200 (1987), the Court held that there is no Confrontation Clause violation when the defendant's name and existence are excised from the statement and limiting instructions are given, even though the confession might implicate the defendant when linked to other evidence. The Court revisited the issue in Gray v. Maryland, 523 U.S. 185 (1998), holding that, notwithstanding cautionary instructions and neutral redactions, Bruton is violated when the fact that a statement had been redacted is so obvious as to lead the jury through ordinary inferences directly to a defendant. The Gray Court held that the obvious indication of alteration is directly accusatory.

523 U.S. at 194.[2]  In assessing whether a case falls within the <u>Bruton</u> rule as in <u>Gray</u> or outside it as in <u>Marsh</u>, the Supreme Court looks at whether the context is one in which the risk is too great that the jury will not or cannot follow the cautionary instruction to consider the statement solely against the declarant.  <u>Gray</u>, 523 U.S. at 190-191.

Williams argues that the manner in which Caldwell's statement was redacted violated <u>Gray</u> because it impermissibly led the jury to infer that his name had been deleted.  He contends that the repeated use of the word "someone" in the recitation of Caldwell's statement is awkward and so interlocked with the extensive testimony about the police surveillance of Williams's travels that it was obvious to the jury that only Williams could be the "someone" in Caldwell's statement.

The government argues in response that it properly replaced the defendant's name with a neutral pronoun, which did not draw attention to the redaction and was not incriminating unless linked to the co-defendant by other trial evidence.  <u>United States v. Edwards</u>, 159 F.3d 1117, 1125-26 (8th Cir. 1998).

In <u>United States v. Logan</u>, 210 F.3d 820 (8th Cir. 2000) (en banc), we considered the kind and degree of the redactions to determine whether there was a violation under <u>Gray</u>.  We distinguished the almost invisible redaction in <u>Logan</u>, where the substitution could just as easily have been the defendant's actual words, from the obviousness of the word "deleted" which was condemned in <u>Gray</u>.  <u>Id</u>. at

---

[2]Williams did not argue the applicability of <u>Crawford v. Washington</u>, 541 U.S. 36, 57 (2004), in which the Supreme Court found a Confrontation Clause violation in hearsay testimonial statements where there was no opportunity for cross-examination.  We note that <u>Crawford</u> did not overrule <u>Bruton</u> and its progeny, <u>id</u>., and like other Confrontation Clause error, is subject to harmless error analysis.  <u>United States v. Rashid</u>, 383 F.3d 769 (8th Cir. 2004), <u>cert</u>. <u>denied</u> 125 S.Ct. 941 (2005).

823. We then compared the single instance of redaction in <u>Logan</u> with the violation in <u>Gray</u>, where the word "deleted" was repeated four times in oral testimony, and where the jury also had the written statement containing blanks where the defendant's name had been excised. <u>Id</u>.

In contrast to <u>Logan</u> and increasing ten-fold the number of redactions in <u>Gray</u>, here we count more than forty instances where Williams's name was replaced with the word "someone." The following are some excerpts from Caldwell's statement as read to the jury:

> Caldwell stated on October 25, 2002 that <u>someone</u> arrived at his mother's residence earlier that day in Stuttgart, Arkansas looking for him. Caldwell stated that his mother advised <u>someone</u> that he was at work. Caldwell stated that <u>someone</u> did arrive at the Precision Farm and Trucking Company . . . at Caldwell's work place. Caldwell stated that he met with <u>someone</u> [at his place of work]. Caldwell stated that <u>someone</u> advised him that he had something . . . and wants him to come by [after work]. Caldwell stated that <u>someone</u> advised him that he had some good [marijuana and cocaine]. . . . Caldwell stated that after work he and two of his nephews . . . traveled to Pine Bluff, Arkansas and met with <u>someone</u> . Caldwell stated that his nephews were not involved with his drug deals with <u>someone</u>. Caldwell stated that he met with <u>someone</u> at 403 North Myrtle Street in Pine Bluff, Arkansas. Caldwell stated that he picked up [amount of] crack cocaine from <u>someone</u> at that location...Caldwell stated that <u>someone</u> advised him that <u>someone</u> had half a pound of weed, which is marijuana, at room 127 at Horizon Inn in Pine Bluff, Arkansas. Caldwell further stated that . . . <u>someone</u> wanted him to go to the Horizon Inn to retrieve the marijuana. . . . Caldwell stated that at that location <u>someone</u> and he exited the vehicle and entered room 127. . . .Caldwell stated that [after leaving the hotel] he dropped <u>someone</u> [and another person] off at CJ's Garage located at 205 South Orange

-10-

> Street in Pine Bluff, Arkansas. . . . Caldwell stated that he
> started dealing with <u>someone</u> in 1995 or 1996. . . .
> Caldwell stated that during this time <u>someone</u> was
> supplying a lot of people in the Pine Bluff, Arkansas area.
> (Emphasis added.)

Applying the analysis of <u>Logan</u>, it would appear that in kind and degree, the redaction of Caldwell's statement made it obvious that a name had been redacted. The replacements were not seamlessly woven into the narrative as in <u>Logan</u>, and the neutral pronoun "someone" may have lost its anonymity by sheer repetition. It may well have been clear to the jury that the statement had obviously been redacted and that the "someone" of the statement was defendant Williams. <u>Gray</u>, 523 U.S. at 196. As the Supreme Court held in <u>Gray</u>, this case may fall within the <u>Bruton</u> class of cases where a district's court's repeated cautionary instructions cannot protect the defendant. <u>Id</u>. at 192.

However, we need not decide that issue because, assuming that a Confrontation Clause error occurred**,** we hold that the error in admitting Caldwell's statement was harmless beyond a reasonable doubt. <u>United States v. Chapman</u>, 345 F.3d 630, 635 (8th Cir. 2003)(stricter standard of harmless beyond a reasonable doubt applies to confrontation right error).

The independent evidence against Williams, including his own statement, was so overwhelming as to render any such error harmless beyond a reasonable doubt. The DEA was acting on information that Williams carried drugs into Arkansas. DEA agents saw him at a business on Myrtle Street where the activity was indicative of possible drug trafficking; they saw him at the residence next door where his activity was consistent with drug trafficking; he met with Caldwell at that residence and was observed giving him a package; he and Caldwell entered room 127 at the Horizon Inn together, the room in which Williams's driver's license, crack cocaine, and other drug paraphernalia were found; Caldwell and Williams left room 127 together and Williams handed a package to the front seat passenger before entering Caldwell's car

and leaving the hotel grounds; and when Caldwell was stopped shortly thereafter, marijuana and crack cocaine were found in his car. Moreover, Williams himself admitted that he had been involved in crack cocaine and marijuana trafficking for many years. Thus, "we are convinced that [Williams's] conviction cannot be attributed to [Caldwell's] statement." Id.

2. From Dancy

Williams argues that the district court erred in denying his motion to sever his trial from Dancy's on the ground that their defenses were antagonistic. The district court did not err, because it is well-established that defenses are not antagonistic simply because one defendant tries to shift the blame to the other, as Dancy did. United States v. Flores, 362 F.3d 1030, 1039-40 (8th Cir. 2004)

C. Sufficiency of the indictment

As the government concedes, failure of an indictment to allege the elements of the offense cannot be corrected by amendment. The issue is not notice to the defendants. Rather, the question is whether the grand jury considered the missing element. "It is well-established in this circuit that citation of the statute, without more, does not cure the omission of an essential element of the charge because bare citation of the statute 'is of scant help in deciding whether the grand jury considered' the missing element in charging the defendant." United States v. Olson 262 F.3d 795, 799 -800 (8th Cir. 2001) (quoting United States v. Camp, 541 F.2d 737, 740 (8th Cir. 1976)). Absent the allegation that possession of the drugs was with the intent to distribute them, counts 4 and 5 did not charge a violation of 21 U.S.C. § 841(a)(1) and the convictions on those grounds must be reversed.

## III. CONCLUSION

For the reasons stated herein, we reverse Caldwell's and Williams's convictions for violating 21 U.S.C. § 841(a)(1) (possession with intent to distribute crack cocaine) (Counts 4 and 5 respectively), and remand the case to the district court with directions to vacate Counts 4 and 5.  We affirm the judgments of conviction with respect to all other counts.

_____