# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3475

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the Eastern
　　　　　　　　　　　　　　　　　　*　District of Missouri.
Hugo Barry Thompson, Jr.,　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　 *

_____

Submitted: February 12, 2008
Filed:  July 21, 2008

_____

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Hugo Barry Thompson, Jr., was convicted by a jury of conspiracy to distribute more than 50 kilograms of marijuana.  See 21 U.S.C. §§ 841(a)(1), 846.  The district court[1] sentenced Thompson to 96 months imprisonment.  Thompson appeals his conviction.  We affirm.

I.

_____

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

On February 19, 2007, the St. Louis County Multi-Jurisdictional Drug Task Force (Task Force) received information about possible drug activity at the Best Western Motel in Kirkwood, Missouri. Based upon this information, Officers with the task force established surveillance of a room at the motel which was rented by Barry Collins. A teal Chevrolet Uplander rented in the name of Michael Johnson (Michael) was parked outside the room. A silver Oldsmobile 98 was parked beside the Uplander. While conducting surveillance, Task Force Detective Quinn Turner looked inside the Uplander and noticed a black covering over what appeared to be numerous bulky objects in the rear of the vehicle. Detective Turner noted that this was similar to the way several large bundles of marijuana were stored in a vehicle in a case he worked in January of 2007, which also involved a vehicle rented to a Michael Johnson.

Approximately 30 minutes after he began surveillance at the motel, Detective Turner observed Thompson, Earl Thomas Marshall, and Collins come outside, look in the windows of the Uplander and then leave in the Oldsmobile. Detective Turner continued surveillance of the motel and the Uplander. He observed the three men return in the Oldsmobile about 30 minutes later and saw them reenter the motel. Shortly after they returned, the three men again left in the Oldsmobile. Detective Turner did not follow the Oldsmobile. Instead, he continued surveillance of the motel and the Uplander. When the Oldsmobile returned to the motel parking lot the second time, only Thompson was inside the vehicle. Thompson parked the Oldsmobile beside the Uplander, and again went inside the motel. When Thompson next exited the motel, he was talking with Valerie Ann Weber. Detective Turner then saw Thompson put a bag inside the Oldsmobile and Weber put a bag inside the Uplander. Thompson and Weber were then joined by Kendra Walton and Jacqueline Johnson (Jacqueline) who also exited the motel. Weber and Walton got in the Uplander and Thompson and Jacqueline got in the Oldsmobile. The two vehicles then exited the lot and started to travel on Highway 44. Prior to the Oldsmobile and the Uplander exiting the motel parking lot, Detective Turner had continuously observed the Uplander and

knew that no items had been removed from the vehicle. Task Force investigators then requested that local law enforcement assist them by stopping the vehicles for further investigation.

When the vehicles entered the city of St. Louis, a city police officer who was in a marked patrol car observed the Oldsmobile cross the center line, thus failing to maintain a single lane of traffic in violation of the Missouri traffic laws. The city officer stopped the Oldsmobile for the offense. Task Force Detective Joseph Hollocher, who had assisted Detective Turner in conducting the surveillance at the motel, heard about the stop of the Oldsmobile on the police radio and arrived at the scene of the stop within one minute of the initial traffic stop. When Detective Hollocher arrived, Thompson and Jacqueline were standing at the rear of the Oldsmobile. When Detective Hollocher asked Thompson where he was coming from, Thompson told him that he was in St. Louis for a family reunion and stated that Jacqueline was his cousin.

The Uplander was stopped by other law enforcement personnel, including Detective Turner. While Detective Hollocher was talking with Thompson, he was contacted by Detective Turner who reported to him that the during the stop of the Uplander, a large quantity of marijuana was discovered in the back of that vehicle. At that point, Detective Hollocher placed Thompson and Jacqueline under arrest. Immediately thereafter, Thompson gave Detective Hollocher consent to search the Oldsmobile. Shortly after the search began, Thompson agreed to allow the officers to move the vehicle in order to continue the search at the Drug Enforcement Agency (DEA) office for safety reasons. No items were seized prior to the Oldsmobile being moved. After the Oldsmobile was moved to the DEA office, an empty safe, a bundle of cash and personal items belonging to Jacqueline, Weber, Walton, Collins, and Marshall were found it the trunk of the Oldsmobile. None of the items seized from the Oldsmobile appeared to belong to Thompson.

Thompson, Jacqueline, Walton, and Weber were indicted on March 8, 2007, for conspiracy to distribute more than 50 kilograms of marijuana. See 21 U.S.C. §§ 841(a)(1), 846. Jacqueline, Walton, and Weber later pled guilty to the indictment. Adopting the report and recommendation of the magistrate judge[2], the district court denied Thompson's motion to suppress evidence and statements against him. Following the denial of his motion to suppress, Thompson proceeded to trial where he was convicted. At Thompson's trial, co-conspirator Rebecca Exley testified that she participated in two trips in 2006 that were part of the conspiracy. She testified that in January of 2007, Thompson loaded marijuana into different vehicles and placed scented dryer sheets inside the bags of marijuana. Exley further testified that although Thompson was not present at the time of her arrest, he participated in the conspiracy which resulted in her arrest[3] and the arrest of four other people on January 9, 2007.

In addition to the testimony from Exley, the jury also heard testimony from Jacqueline. Jacqueline testified that on February 12, 2007, Thompson drove himself and another man, known only as "Patrick," in the same teal Uplander rented by Michael from Oklahoma City to Troy, Illinois, where they met Marshall and Jacqueline. Jacqueline testified that Marshall hired her to transport money from Ohio to Arizona and then accompany the marijuana from Arizona to Ohio without requiring her to be in the car with the marijuana. Jacqueline testified that Marshall identified Thompson as his "middleman" who she would see every time she was traveling with money or marijuana. Marshall stored Thompson's phone number in Jacqueline's cellular telephone. After the money was moved from inside safes to the Uplander, Patrick started to drive Thompson, Jacqueline, Marshall, and the money in the

_____

[2]The Honorable Audrey G. Fleissig, United States Magistrate Judge for the Eastern District of Missouri.

[3]When Detective Turner made the comparison of the bundles beneath the black covering in the rear of the Uplander to another case he worked earlier in the year, he was referring to the case that resulted in Exley's arrest, which also involved a vehicle rented by Michael.

Uplander from Troy to St. Louis. At some point, Thompson took over the driving because he told Patrick that he was driving too fast. Thompson drove them to meet Collins, Weber, and Walton at a hotel in St. Louis. Collins, Weber, and Walton had driven the Oldsmobile from Ohio to St. Louis. From there, Jacqueline, Marshall, and Patrick drove the money to Oklahoma City in the Uplander, and Weber, Walton, and Collins rode in the Oldsmobile. Then, Walton, Weber, Jacqueline, Collins, and Marshall drove the money to Phoenix in the Oldsmobile to pick up the marijuana, while Thompson stayed in Oklahoma.

According to Jacqueline, while she was traveling to Phoenix with Walton, Weber, Collins, and Marshall, the Oldsmobile was temporarily traded for a green van which was located in the parking lot of an apartment building in Albuquerque, New Mexico. Jacqueline testified that once the group arrived in Phoenix, Marshall told the women to buy scented dryer sheets for use in packing the marijuana inside the van. The group returned to Albuquerque with the marijuana, where the green van was exchanged for the Oldsmobile which was then used to transport the marijuana to Oklahoma City. When the group arrived in Oklahoma City, Collins and Walton rented three motel rooms and were joined at the motel by Michael, Thompson, and Patrick. Jacqueline said that the marijuana was then moved from the Oldsmobile to the Uplander. Thompson then drove Walton, Jacqueline, and Marshall in the Oldsmobile from Oklahoma City to St. Louis, while Weber and Collins drove the Uplander, which was loaded with the marijuana, from Oklahoma City to St. Louis. Jacqueline reported that when the Oldsmobile and Uplander arrived in St. Louis, Collins rented two rooms at the motel.

Officers testified that it was at this point that the Task Force officers received the information which led to the surveillance at the hotel, the traffic stops of the Oldsmobile and the Uplander, the discovery of large amounts of marijuana and currency, and the arrests of Thompson, Jacqueline, Weber, and Walton. After their arrests, Jacqueline and Walton told the DEA agents about their involvement and the

involvement of their co-conspirators in the conspiracy. Exley, Walton, and Jacqueline testified as cooperating witnesses at Thompson's trial.

Following Thompson's conviction, the district court sentenced him to 96 months in prison. Thompson appeals the denial of his motion to suppress and his conviction.

## II.

Thompson argues that the district court erred by: (1) denying his motion to suppress physical evidence seized as a result of the traffic stop; (2) denying his motion for judgment of acquittal due to insufficient evidence; and (3) denying his motion for a mistrial following prejudicial statements about his criminal history by government witnesses.

## A.

When we consider the denial of a motion to suppress evidence, "we review the district court's factual findings for clear error and its legal conclusions *de novo*." United States v. Kimhong Thi Le, 474 F.3d 511, 514 (8th Cir.), cert. denied, 127 S. Ct. 2891 (2007). Thompson alleges that his vehicle was illegally stopped and that he was arrested without probable cause. With respect to the vehicle stop, Thompson objects to the fact that Detective Hollocher did not see the traffic violation and instead relied on the report of the city officer. "'[I]t is well established that a traffic violation--however minor--creates probable cause to stop the driver of a vehicle.'" United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007) (quoting United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996)). The collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers. See United States v.

Williams, 429 F.3d 767, 771-72 (8th Cir. 2005) (collective knowledge doctrine sufficient to impute knowledge of other officers on team to an officer who received a radio request from the team to stop the vehicle.) Despite the fact that the vehicles were under surveillance as part of a narcotics investigation at the time the traffic violation and resulting traffic stop occurred, the traffic violation nonetheless gave law enforcement probable cause to conduct the traffic stop. See Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Thompson also complains that the city officer who actually stopped the Oldsmobile was not present at the hearing and did not testify as to why the Oldsmobile was stopped. "[T]he right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial. '[T]he interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself.'" United States v. Boyce, 797 F.2d 691, 693 (8th Cir. 1986) (quoting United States v. Raddatz, 447 U.S. 667, 679 (1980)). Although not admissible at trial, the district court may rely on hearsay evidence at a suppression hearing. Id. Thus, the trial court did not err in relying on hearsay testimony as to the traffic violation that led to the traffic stop of the Oldsmobile. The city officer's observation of the Oldsmobile committing a traffic violation established probable cause for the stop of the Oldsmobile. Therefore, the motion to suppress was properly denied.

B.

Thompson also argues that he was arrested without probable cause because the marijuana was found in the Uplander rather than the Oldsmobile; thereby making the search of the Oldsmobile incident to his arrest a search in violation of his Fourth Amendment rights. We review the district court's determination of probable cause de novo and its factual findings for clear error. United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005). "Probable cause exists if the totality of the circumstances

known to all officers involved at the time of the arrest 'were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense.'" Id. (quoting United States v. Cabrera-Reynoso, 195 F.3d 1029, 1031 (8th Cir. 1999)).

The district court determined that at the time of his arrest, the officers were aware of numerous facts that indicated the existence of probable cause to arrest Thompson. Collectively, the officers were aware of: (1) all of Thompson's activities at the motel which they observed during their surveillance, including his coming and going from the motel and his looking inside the rear of the Uplander while it was parked at the motel; (2) Thompson's link to the Uplander and its occupants, as well as the eventual discovery of a large amount of marijuana inside the Uplander; (3) all of the similarities of this case with the previous case which resulted in the arrest of Exley and her co-defendants, including the manner in which the marijuana was concealed in the Uplander and the appearance of the same name on the rental agreement of the Uplander as the rented vehicle involved in the previous case; and (4) the inconsistency of what the officers observed at the motel with Thompson's statement to the officer that he and Jacqueline were in St. Louis for a family reunion. Based on the totality of the circumstances known to all of the officers involved at the time of his arrest, there was probable cause to arrest Thompson. See United States v. Banks, 514 F.3d 769, 776 (8th Cir. 2008) (collective knowledge doctrine imputes the knowledge of all officers in a team upon a single officer of the team, so long as there is communication between the officers); Williams, 429 F.3d at 771-772. Therefore, Thompson's attack on the search incident to his arrest is also without merit.

C.

Next, Thompson argues that the district court erred in denying his motion for judgment of acquittal due to insufficient evidence. Federal Rule of Criminal Procedure 29 requires the district court to enter a judgment of acquittal when the

evidence is "insufficient to sustain a conviction" for any offense.  Fed. R. Crim. P. 29(a).  We review the denial of a judgment of acquittal de novo.  United States v. Water, 413 F.3d 812, 816 (8th Cir. 2005).  "We employ a strict standard of review regarding denials of motions for acquittal, viewing the evidence in the light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, and accepting all reasonable inferences supported by the evidence."  United States v. No Neck, 472 F.3d 1048, 1052 (8th Cir. 2007) (citing United States v. Littrell, 439 F.3d 875, 880 (8th Cir.), cert. denied, 127 S. Ct.  331 (2006)).  A jury verdict will not lightly be overturned and "we will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt."  Id.  "When reviewing the sufficiency of the evidence to support a conspiracy conviction, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt."  United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir.) (en banc), cert. denied, 127 S. Ct. 214 (2006).

Thompson argues that, while the evidence presented against him established that he was present in St. Louis and that he was intimately involved with Walton, it was insufficient to support his conviction.  However, in addition to hearing the testimony of law enforcement officers about their observations during their surveillance at the hotel and evidence seized as a result of the searches of the Oldsmobile and Uplander, the jury heard detailed testimony about Thompson's involvement in the conspiracy from three of his co-conspirators:  Exley, Walton, and Jacqueline.  We note that "[t]estimony of an accomplice is sufficient to sustain a conspiracy conviction unless it is incredible or insubstantial on its face."  United States v. Watson, 677 F.2d 689, 691 (8th Cir. 1982).  Thompson alleges neither that the testimony of the three co-conspirators was incredible or insubstantial on its face.  In fact, both direct and circumstantial evidence  sufficiently tied Thompson to the conspiracy to distribute more than 50 kilograms of marijuana.  See United States v. Lam, 338 F.3d 868, 872 (8th Cir. 2003) ("The evidence . . . both direct and

circumstantial, sufficiently tied [defendant] to the charged bank fraud transactions, and the district court properly denied, on this basis, [defendant]'s motion for judgment of acquittal."). Upon a review of the evidence presented against Thompson, we find there was substantial evidence to support his conviction of conspiracy.

D.

Thompson's final argument on appeal is that the district court erred in denying his motion for mistrial due to government witnesses making prejudicial statements about his criminal history. The denial of a motion for mistrial is reviewed for an abuse of discretion. United States v. Smith, 487 F.3d 618, 622 (8th Cir.), cert. denied, 128 S. Ct. 322 (2007). In conducting this review, "'[t]he prejudicial effect of any improper testimony is determined by examining the context of the error and the strength of the evidence of the defendant's guilt.'" Id. (quoting United States v. Hollins, 432 F.3d 809, 812 (8th Cir. 2005)).

Thompson's motion for mistrial was centered around two statements made during the course of the testimony of Exley and Walton. In answer to a question by the government about why she and another co-conspirator were the only two who stayed at a motel on the night she was arrested in January of 2007, Exley testified that Thompson and another female had already returned to Oklahoma so that Thompson could meet with his probation officer. There was no objection to this remark and no curative instruction was requested.

The other comment that Thompson raised in his motion for mistrial occurred when Walton was answering a question posed by defense counsel about what day the group returned to Oklahoma City from Albuquerque. Walton responded that she was not exactly sure of the day, but that is was probably a Saturday or a Sunday because Thompson "had to do weekends, and some -- one of the County Jails was down there." Again, there was no objection to the statement and no request for a curative

instruction. In fact, the district court raised the issue before it was raised by defense counsel. At the end of the day the two statements were made, the district court noted sua sponte that, despite the fact that the comments were not elicited by the government's questions, it would be a "good idea" for the government to caution its remaining witnesses not to make any reference to Thompson's criminal history during their testimony. Defense counsel stood silent during this exchange. No curative instruction was requested. The following morning, defense counsel moved for a mistrial on the basis that the statements of Exley and Walton were not admissible or properly before the jurors because Thompson was not going to testify. The government opposed the motion, noting that the statements were not responsive, not followed up on, nor highlighted in any way. The government also pointed out that the comment about Thompson "do[ing] weekends" would not necessarily be a phrase with which the jurors were familiar, was ambiguous, and did not clearly convey that Thompson was serving a jail sentence. The district court denied the motion for mistrial, noting that the statements were not made in response to the government's questions, the government had since instructed their witnesses to refrain from making such statements, and that the statements "were not sufficiently prejudicial, given all the circumstances, to warrant a mistrial." The district court also considered the lack of objection or motion to strike, and offered to give a curative instruction. However, the defense did not request the offered curative instruction.

On appeal, Thompson argues that because there were two inappropriate comments about Thompson's criminal history, the district court erred in denying his motion for a mistrial. Thompson asserts that United States v. Cole, 380 F.3d 422 (8th Cir. 2004), would support a denial of a motion for mistrial only when there is one inappropriate comment in the record. He argues that the existence of more than one such comment mandates that the district court grant the motion for mistrial. However, Cole is not limited to its facts. In Cole, we stated that "[t]he prejudicial effect of *any* improper testimony is determined by examining the context of the error and the strength of the evidence of the defendant's guilt." Id. at 427 (emphasis added). The

district court is in the better position to measure the prejudicial effect of improper testimony than an appellate court which can only review the cold trial transcript.  <u>Id.</u> (quoting <u>United States v. Nelson</u>, 984 F.2d 894, 897 (8th Cir. 1993)).  The district court considered all of the evidence against Thompson as well as the statements at issue, and found that the two statements were not sufficiently prejudicial to warrant granting a mistrial.  We do not find that the district court abused its discretion in making that determination.

III.

For the foregoing reasons, we affirm.

_____
