John Lehman LAMB, Sr. *v.* STATE of Arkansas

CR 07-753                                       275 S.W.3d 144

Supreme Court of Arkansas
Opinion delivered February 7, 2008

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Farhan Khan*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. John Lehman Lamb, Sr., was convicted by a jury in Greene County Circuit Court of raping H.M., a five-year-old girl, and sentenced to life imprisonment. Lamb now appeals his conviction, arguing two grounds for reversal: (1) the circuit court erred in denying his motion in limine to exclude certain testimony under Ark. R. Evid. 404(b), and (2) the circuit court erred in denying his motion for directed

verdict. Because Lamb received a life sentence, we have jurisdiction over this appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2007).

## I. Sufficiency of the Evidence

Although Lamb did not challenge the circuit court's directed-verdict ruling in his first point on appeal, double-jeopardy considerations require this court to review his directed-verdict argument first. *See Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). Lamb asserts that the circuit court erred in denying his motion for directed verdict because the State did not present substantial evidence to prove that he raped H.M. Specifically, he contends that rape requires penetration, and the only evidence of penetration was H.M.'s uncorroborated testimony. He argues that H.M. lacked credibility as a witness, and her descriptions of Lamb's alleged actions were incredible and unbelievable for a child of H.M.'s age. The State, however, asserts that there was substantial evidence to support Lamb's conviction because the uncorroborated testimony of a rape victim is sufficient to support a conviction.

The State also argues that Lamb did not preserve this argument for appeal because defense counsel failed to make a specific motion for directed verdict. In order to preserve an issue for an appeal of a denial of a directed-verdict motion, the issue must be stated clearly and specifically to the circuit court. *Phillips v. State*, 361 Ark. 1, 203 S.W.3d 630 (2005). The reasoning underlying this requirement is that when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof. *Id.* A further reason that the motion must be specific is that the appellate court may not decide an issue for the first time on appeal and cannot afford relief that is not first sought in the circuit court. *Id.* A party moving for directed verdict may not change his arguments on appeal and is limited to the scope and nature of his arguments made below. *See Hunter v. State*, 330 Ark. 198, 952 S.W.2d 145 (1997).

In the instant case, at the close of the State's case-in-chief, defense counsel moved for a directed verdict, stating:

> Your Honor, at this time I would move for a directed verdict on behalf of the defense. The court, with regard to issues of rape that have been alleged, the State, with the exception of the testimony of the little child, offered no proof with regard to the rape other than

just the uncorroborated statements made by my client which do not rise to the level of rape. It would certainly be more in the regard of sexual assault.

At the close of all the evidence, defense counsel renewed the earlier motion for a directed verdict.

■ The grounds for defense counsel's directed-verdict motion are essentially the same as those now made on appeal — that is, the State did not offer any evidence other than the victim's testimony that supported the rape charge. Thus, because the only argument on appeal is the same as that which was specifically raised in defense counsel's directed-verdict motion and because a review for prejudicial error under Ark. Sup. Ct. R. 4-3(h) (2007) is required in this case, we conclude that Lamb's motion was specific enough for purposes of appellate review.

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Ramaker v. State, supra.* The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.*

Pursuant to Arkansas Code Annotated § 5-14-103(a)(3)(A) (Repl. 2006), a person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. *Id.* Deviate sexual activity is defined as sexual gratification involving the "penetration, however slight, of the anus or mouth of a person by the penis of another person." Ark. Code Ann. § 5-14-101(1)(A) (Repl. 2006).

The following evidence was presented at Lamb's trial. Lamb first became acquainted with the victim's mother, Dana Mathews, when she was a child. In 1999, the two became reacquainted as adults, when Dana, who was living on the streets, approached Lamb in Blytheville. Lamb took Dana into his home and eventually a romantic relationship ensued. H.M. was born in July 2001, while Dana was living with Lamb. Although Lamb was not H.M.'s father, Lamb did refer to himself as H.M.'s godfather. For the next several years, Dana and Lamb maintained a romantic relationship. During portions of their relationship, both were addicted to illegal

drugs. Lamb successfully completed treatment for his addiction, but Dana shifted between treatment and prison. As a result, Dana lost custody of H.M. twice. By the time of the charged offenses, however, H.M. was living with Dana in a home that Lamb had procured for them in Paragould. Lamb routinely helped Dana care for H.M. by doing such things as bathing H.M. and getting her ready for school in the mornings.

In December 2005, Stacy Shannon, H.M.'s aunt, called the local child-abuse hotline to report that Lamb had sexually abused H.M. Rhonda Thomas, a detective with the Paragould Police Department, and Chris Shelton, an investigator with the Arkansas State Police, interviewed both H.M. and Lamb. H.M. denied any abuse during her initial interview with the investigators, but, in later interviews she admitted to being abused by Lamb. According to Thomas, H.M's behavior during the first interview was that of a child who had been coached to deny abuse. Meanwhile, Lamb was insisting that he was innocent and demanded a polygraph test. Nonetheless, Lamb did admit that during the 1980s he had engaged in sexual acts with his two daughters and a neighborhood girl, including "coaxing" his daughter into performing oral sex on him. The prior acts occurred in Mississippi, and Lamb was never convicted for the abuse; instead, the matter was handled in family court.

On December 13, 2005, Lamb voluntarily went to the Arkansas State Police office in Jonesboro and submitted to an interview and polygraph test administered by Investigator Pardo Roberts. After Lamb was shown the test results that indicated he had been deceptive when answering questions about H.M., Roberts convinced him to make a written statement. In the statement, Lamb admitted to occasionally bathing H.M. as a favor to her mother, and because H.M. had not been washing herself properly, he used his hand once to "inspect her vagina" and make sure she was clean.

That same day, Lamb decided to make a different statement to Rhonda Thomas in an effort to clarify what he had done to H.M. In the tape-recorded statement, Lamb said that one day he was trying to get H.M. ready for school, and she was being difficult, so he decided to discipline her. He pulled down her pants and laid her over his knee, but instead of spanking her bare buttocks, he "reached between her legs . . . and gently rubbed her vagina."

Roberts, Shelton, and Thomas all testified during the State's case-in-chief. In addition, the two statements Lamb made to police and his admissions about sexually molesting his daughters were presented to the jury. H.M. also testified for the State. She stated that her "Uncle John," as she called Lamb, put his "bad spot" in her mouth and "peed" in her mouth. She described his "bad spot" as looking like an elephant trunk and his "pee" as looking like "chicken noodle soup without the noodles or the chicken." H.M. also corroborated Lamb's statement that one day he had rubbed between her legs instead of spanking her.

The defense called two witnesses, H.M.'s former therapist and case worker, to testify about their work with H.M. Donna Parker, the former therapist, testified that she had worked with H.M. for two and one-half years, and during that time she suspected that H.M. had been sexually abused. Yet, even when pressed by the therapist, H.M. never reported any abuse. The case worker, Lori Hoggard, also testified that H.M. had never disclosed any abuse.

Lamb testified in his own defense, and, although he admitted to sexually abusing his own children, he maintained his innocence in this case. He asserted that Stacy Shannon's allegations were complete falsehoods and that both of his statements to police were untrue.

This court has repeatedly held that the uncorroborated testimony of a rape victim that shows penetration is sufficient evidence for a conviction. *See Gatlin v. State*, 320 Ark. 120, 895 S.W.2d 526 (1995). This court has also held that a child victim's use of her own terms for body parts, rather than the correct anatomical terms, is sufficient evidence if it demonstrates a knowledge of what and where those body parts referred to are. *See Tinsley v. State*, 338 Ark. 342, 993 S.W.2d 898 (1999).

In the instant case, H.M. was under fourteen years of age when the alleged acts occurred. Likewise, H.M.'s testimony provided sufficient evidence of penetration. In her own terms, H.M. stated that Lamb put his "bad spot" in her mouth and "peed in her mouth." She described Lamb's "bad spot" as looking like an elephant trunk, and his "pee" as looking like "chicken noodle soup without the chicken or the noodles." This uncorroborated testimony alone was enough to prove that H.M. had knowledge of the body parts she described, that penetration of her mouth occurred, and that Lamb was sexually gratified by the act. Lamb

argues that H.M. denied any abuse during her original statement to police, and, therefore, she was not a reliable witness. However, questions of witness credibility are left to the discretion of the jury, and the jury is entitled to believe or disbelieve the testimony of any witness. *See Arnett v. State*, 353 Ark. 165, 122 S.W.3d 484 (2003). Moreover, Lamb's statements to police indicated that, at the very least, he engaged in some sexual activity with H.M., which in turn could have lent some credibility to H.M.'s testimony in the eyes of the jury. Accordingly, we affirm the circuit court's decision to deny Lamb's directed-verdict motion.

## II. Rule 404(b) Objection

For his second argument on appeal, Lamb argues that the circuit court erred in denying his motion in limine to exclude evidence of his prior sexual acts with children. He contends that the prior bad acts do not fit any of the exceptions to Arkansas Rule of Evidence 404(b). He also asserts that his past sexual acts with children have no independent relevance to the charged offense. The State argues that the evidence of Lamb's prior bad acts shows his proclivity towards sexual acts with young children.

Under Arkansas Rule of Evidence 404(b), any evidence of a person's other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. Ark. R. Evid. 404(b) (2007). However, the evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, and we will not reverse absent a showing of manifest abuse of that discretion. *See Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004). Evidence offered under Rule 404(b) must be independently relevant to make the existence of any fact of consequence more or less probable than it would be without the evidence. *See Cook v. State*, 345 Ark. 264, 45 S.W.3d 820 (2001). In other words, the prior bad act must be independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal. *See Nelson v. State*, 365 Ark. 314, 229 S.W.3d 35 (2006).

Our court has recognized a "pedophile exception" to Rule 404(b). We have approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in

showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005). The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Id.*

In *Flanery, supra,* the defendant was accused of participating in sexual intercourse and oral sex with a minor girl, who was staying in his home, and the circuit court allowed his daughter to testify that several years earlier, when she was fourteen, the defendant inappropriately touched her. *Id.* We held that the evidence was admissible in light of the fact that both the victim and the witness lived in the defendant's house, he was a father figure to both girls, and the girls were similar in age at the time when they were abused. *Id.* Then, in *Hamm v. State*, 365 Ark. 647, 232 S.W.3d 463 (2006), we again held that the numerous similarities between the witness's allegations and the victim's allegations made the evidence of the defendant's prior bad acts admissible under the pedophile exception. *Id.* Specifically, the girls were both the same age when the abuse began, they both met the defendant at church and were under his supervision there, both frequently visited his home, both reported that the abuse occurred while they were alone with him, and he was not related to either girl. *Id.*

Here, there is certainly a connection between the evidence of Lamb's prior abuse of his daughters and his alleged abuse of H.M. that shows his proclivity towards sexual acts with young girls. In both cases, Lamb occupied a caregiver role for the victims and the sexual act alleged, oral sex, was identical. In sum, the evidence of Lamb's prior sexual acts with his daughters tended to show his depraved sexual instinct.

Lamb argues that the prior sexual acts with children, which occurred almost twenty years ago, are too remote in time from the charged acts to be relevant. Evidence admitted pursuant to Rule 404(b) must not be too separated in time, making the evidence unduly remote. *See Nelson v. State*, 365 Ark. 314, 229 S.W.3d 35 (2006). The circuit court is given sound discretion over the matter of remoteness and will be overturned only when it is clear that the questioned evidence has no connection with any issue in the present case. *Id.* In *Nelson*, we held that, even though the defendant's prior conviction was fourteen years old, the evidence tended to show his intent to commit the charged crime and was, therefore, not too remote in time to be relevant. *Id.* Similarly, in *Flanery v. State, supra,* we held that the defendant's prior bad acts,

which occurred seven years before the charged acts, were not too separated in time given the similarity of the two cases that evidenced a proclivity towards sexual acts with young girls. *Id.*

Again, in this case, the similarities between Lamb's admitted abuse of his daughters and the alleged rape of H.M. tended to show Lamb's intent to commit the charged offense. Therefore, under our holdings in *Nelson* and *Flanery*, we conclude that the prior bad acts were not too remote in time to be relevant here.

Lamb also challenges the admission of the prior-bad-acts evidence under Rule 403, contending that the prejudicial effect of the evidence outweighs its probative value because the evidence that he previously molested young girls could be inflammatory to the jury. Under Rule 403, the circuit court may exclude relevant evidence, if the probative value of the evidence substantially outweighs the danger of unfair prejudice to the defendant. Ark. R. Evid. 403 (2007). We review a circuit court's decision to admit evidence over a Rule 403 objection under an abuse-of-discretion standard. *Flanery v. State, supra.* In *Flanery*, we held that the amount of similarities that existed between the witness's allegations and the victim's allegations made the evidence very probative on the issue of the defendant's deviate sexual impulses. *Id.*

Here, there are several similarities between the acts Lamb admittedly committed against his daughters and the charged acts, which show his tendency for deviate sexual impulses toward young girls. Moreover, the evidence that Lamb forced his daughter to perform oral sex on him tends to corroborate H.M.'s testimony that he forced her to perform oral sex. Thus, we cannot conclude that the circuit court abused its discretion in admitting the evidence.

Finally, Lamb argues that the circuit court's limiting instruction to the jury was insufficient to cure any prejudice to Lamb because the evidence was so "patently inflammatory." After a review of the record, we could not find any objection to the limiting instruction. It is a well-settled rule that arguments not raised at trial cannot be raised for the first time on appeal. *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006). Accordingly, we conclude that Lamb's argument as to the limiting instruction was not preserved for appeal, and we will not review it at this time.

### III. Rule 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Lamb, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).