SLIP OPINION

Cite as 2016 Ark. 14

# SUPREME COURT OF ARKANSAS

No. CR–15–387

| | |
|---|---|
| CAINIS REDMOND MACKINTRUSH<br>APPELLANT | **Opinion Delivered** January 21, 2016 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-14-1506] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE HERBERT T. WRIGHT, JUDGE |
| | REVERSED AND REMANDED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Cainis Redmond MacKintrush appeals from the sentencing order of the Pulaski County Circuit Court reflecting his convictions for possession of a Schedule III substance with the purpose to deliver, possession of a Schedule III substance, and possession of drug paraphernalia and his sentence to a total term of imprisonment of 144 months. He asserts that the circuit court erred in (1) denying his motion to suppress when a canine sniff was conducted after his continued seizure without reasonable suspicion; and (2) overruling his objection to the jury's instruction, under AMI Crim. 2d 64.420, because it constituted a comment on the evidence. Because we reverse the circuit court's denial of MacKintrush's motion to suppress, we reverse MacKintrush's convictions and sentence and remand.

MacKintrush does not challenge the sufficiency of the evidence against him; therefore, only a brief recitation of the facts is necessary. *See, e.g.*, *McMiller v. State*, 2014 Ark. 416, 444

SLIP OPINION

S.W.3d 363. The relevant facts, as developed during the hearing on MacKintrush's suppression motion, are as follows. On March 19, 2014, MacKintrush picked up a package at the post office from Mickey Schuetzle, an employee of the United States Postal Inspection Service.[1] Schuetzle had begun a drug-trafficking investigation of the package after it was brought to his attention by a postal-carrier supervisor because the package emitted a strong scent of dryer sheets.[2] The package at issue had been addressed to Darius Riggs at 2905 East Washington Avenue in North Little Rock and had a return address of Josh Johnson, 1565 South Sycamore, Los Angeles, California.

Prior to having turned the package over to MacKintrush, Schuetzle had investigated the addresses on the package using the CLEAR software, which allows law enforcement to check names and addresses. His investigation revealed that the sender's and recipient's names did not match their respective addresses. At that time, Schuetzle notified Investigator Mike Brooks with the North Little Rock Police Department's Narcotics Division of the investigation, and the two decided that Schuetzle would turn over the package with a traffic stop to follow. The plan was based on the fact that the package smelled of dryer sheets and the fact that a previous package "had been intercepted to the same location on Washington Avenue" from what appeared to be the same sending location.

---

[1]MacKintrush had attempted to pick up the package "a couple of times" prior to the actual pick up.

[2]The inspector testified that dryer sheets are sometimes used as a masking agent to control or cover up the odor of illegal narcotics.

When MacKintrush actually picked up the package, he signed for it as Darius Riggs. After he had done so, MacKintrush left, and Schuetzle joined Investigator Brooks in his vehicle in an attempt to observe MacKintrush leaving the post office. At that time, Schuetzle gave Brooks the name of Darius Riggs; however, when Brooks ran the license plate of the vehicle that MacKintrush had entered, it returned to a Cainis MacKintrush, at 2114 Howard Street, in Little Rock.

MacKintrush was eventually pulled over for failing to use a turn signal. After making contact with the driver, Officer Bruce Moyster obtained the driver's license of the driver and sole occupant, MacKintrush. He further sought MacKintrush's consent to search the vehicle, but MacKintrush refused. Brooks then contacted Chief Peter Powell of the Cammack Village Police Department seeking his assistance and that of his drug dog. Officer Moyster testified that after MacKintrush realized that a canine unit had been dispatched, he became more nervous and began to sweat.

The State and MacKintrush stipulated that thirty-four minutes had elapsed between the time that MacKintrush was stopped and the arrival of the canine unit on the scene. During the sniff that was conducted, there was an alert for the presence of narcotics. A search occurred, and an open, brown parcel-style box was found, with two large bags of marijuana outside of it. In addition, a black backpack containing paraphernalia was found, along with some more marijuana; a bottle of hydrocodone pills was found in the vehicle's center console. MacKintrush was subsequently arrested, tried, and convicted, as already set forth. He now appeals.

For his first point on appeal, MacKintrush argues that the circuit court erred in denying his motion to suppress the evidence against him.  He contends that his suppression motion should have been granted because the canine sniff that was conducted on his vehicle was done without reasonable suspicion in violation of the Fourth Amendment; Arkansas Constitution art. 2, section 15; and Arkansas Rule of Criminal Procedure 3.1.  MacKintrush submits that all routine tasks associated with his initial traffic stop had been completed before the canine unit was called, and his prolonged detention for an additional period of time was therefore required to be supported by reasonable suspicion.  He avers that the factors had by police—i.e., that the package smelled like dryer sheets, that the names and addresses on the package did not match, and that he signed for the package as Darius Riggs—were a combination of wholly innocent factors not giving rise to reasonable suspicion.

The State responds, asserting that officers reasonably detained MacKintrush beyond the time necessary for the initial purpose of the stop.  It contends that there was reasonable suspicion to believe that MacKintrush was involved in criminal activity and that MacKintrush's detention was therefore justified.  In addition, the State asserts that the length of MacKintrush's detention did not violate the rules of criminal procedure because the delay in the canine unit's arrival was not unreasonable.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court.  *See Cockrell v.*

SLIP OPINION

*State*, 2010 Ark. 258, 370 S.W.3d 197. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *See id.* We defer to the superiority of the circuit court to evaluate the credibility of witnesses who testify at a suppression hearing. *See id.* At issue here is MacKintrush's continued detention and whether reasonable suspicion existed to warrant that detention.[3] We hold that reasonable suspicion, as that term has been defined by this court, was lacking.

> Pursuant to Ark. R. Crim. P. 3.1,
>
> [a] law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Ark. R. Crim. P. 3.1 (2015). The rule is precise in stating that the reasonable suspicion must be tied to commission of a felony or a misdemeanor involving forcible injury to persons or property. *See Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001). As defined by our criminal rules, "reasonable suspicion" is

---

[3]MacKintrush does not challenge the validity of the initial traffic stop, nor does he or the State appear to dispute that he was detained beyond the time necessary for the initial purpose of the stop.

SLIP OPINION

a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Ark. R. Crim. P. 2.1 (2015).

Whether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person may be involved in criminal activity. *See Dowty v. State*, 363 Ark. 1, 210 S.W.3d 850 (2005). Factors to be considered when determining whether an officer has grounds to "reasonably suspect" a person include, but are not limited to, the following:

> (1) The demeanor of the suspect;
> (2) The gait and manner of the suspect;
> (3) Any knowledge the officer may have of the suspect's background or character;
> (4) Whether the suspect is carrying anything, and what he or she is carrying;
> (5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;
> (6) The time of the day or night the suspect is observed;
> (7) Any overheard conversation of the suspect;
> (8) The particular streets and areas involved;
> (9) Any information received from third persons, whether they are known or unknown;
> (10) Whether the suspect is consorting with others whose conduct is reasonably suspect;
> (11) The suspect's proximity to known criminal conduct;
> (12) The incidence of crime in the immediate neighborhood;
> (13) The suspect's apparent effort to conceal an article; and
> (14) The apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer.

Ark. Code Ann. § 16-81-203 (Repl. 2005); *see also State v. Harris*, 372 Ark. 492, 277 S.W.3d 568 (2008). This court has held that reasonable suspicion to further detain must be developed

before the legitimate purpose of the traffic stop has ended. *See Malone v. State*, 364 Ark. 256, 217 S.W.3d 810 (2005).

We turn then to the information possessed by law-enforcement officers at the time the canine unit was called to assist in the investigation. According to the State, the following facts support a finding of reasonable suspicion: (1) the package contained a strong odor of dryer sheets; (2) the package contained a return address in California and was addressed to Darius Riggs at a North Little Rock address; (3) a package with the same return street address had previously been intercepted by the post office; (4) neither of the names listed on the package was associated with the respective addresses; and (5) MacKintrush did not sign for the package using his own name.[4] These facts, however, simply do not give rise to a finding of reasonable suspicion.

This court has recognized that while the scent of a masking agent along with other factors may constitute reasonable suspicion, the scent, standing alone, is insufficient to do so. *See Lilley v. State*, 362 Ark. 436, 208 S.W.3d 785 (2005). While other facts claimed by the State may exist, they do not, in our opinion, give rise to anything more than bare suspicion.

---

[4]While the State also mentions the fact that MacKintrush appeared to be nervous when he learned a canine unit was on its way, we have held that mere nervousness, standing alone, cannot constitute reasonable suspicion of criminal activity and grounds for detention. *See Laime*, 347 Ark. 142, 60 S.W.3d 464. Moreover, the reasonable suspicion to further detain MacKintrush must have been developed prior to calling the canine unit. *See Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004) (recognizing that the reasonable suspicion necessary to justify further detention is to be formed before the purpose of the initial traffic stop is completed). To that end, any appearance of nervousness after that time is not relevant to our determination of whether there existed reasonable suspicion.

With respect to the names on the packaging not corresponding to the addresses, Investigator Schuetzle himself admitted that the CLEAR database was not infallible and discounted its accuracy, in that people could "rent property," "[n]ot update their driver's license," or temporarily live with someone else. Nor does the fact that a prior package may have been intercepted have much credence, when the record is completely vague as to the details of the interception, and Detective Brooks admitted that nothing tied that package to MacKintrush:

| | |
|---|---|
| DEFENSE COUNSEL: | Okay. Well, we heard about some addresses from Schuetzle. What other indicators? |
| DETECTIVE BROOKS: | There had been a previous label that had been intercepted to the same location on Washington Avenue from I think what appeared to be the same location, and I looked at this label from. [*sic*] Schuetzle showed this to me. But that it was from Los Angeles, California, same street, different numbers, but different zip code as well. That's an indicator. |
| DEFENSE COUNSEL: | Okay. But that − There's nothing that ties Mr. MacKintrush to that label, is there? |
| DETECTIVE BROOKS: | No, not that specific one. |

Finally, we cannot say that there is anything inherently suspicious about MacKintrush signing for the package in question using the name of Darius Riggs, the person to whom the package was addressed. It is certainly reasonable to believe that one might sign in the name of the named recipient for only innocent reasons. For all law enforcement knew at the time the canine unit was called, MacKintrush may have merely picked the package up for someone else.

The facts and circumstances in the instant case simply do not give rise to more than a bare suspicion. As we have previously observed, "it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." *Lilley*, 362 Ark. at 444, 208 S.W.3d at 791 (quoting *United States v. Beck*, 140 F.3d 1129, 1137 (8th Cir. 1998)). Those concrete reasons are not present here. Under the totality of the circumstances, specific, particularized, and articulable reasons indicating that MacKintrush was involved in criminal activity were lacking. Accordingly, we reverse the circuit court's denial of MacKintrush's motion to suppress, reverse MacKintrush's convictions and sentence, and remand.[5]

Reversed and remanded.

BRILL, C.J., and WOOD and WYNNE, JJ., dissent.

**RHONDA K. WOOD, JUSTICE, dissenting.** I respectfully dissent from the majority opinion. Law enforcement developed facts in the course of their investigation that amounted to reasonable suspicion that MacKintrush was engaged in drug-related criminal activity. MacKintrush's continued detention after the legitimate purpose of the traffic stop had ended was therefore justified. I would affirm the circuit court.

The majority accurately describes our standard of review, pointing out that we are to consider the totality of the circumstances. *See Cockrell v. State*, 2010 Ark. 258, 370 S.W.3d 197. In application, however, the majority isolates each suspicious fact and claims that each

---

[5]Because we reverse and remand on this issue, we need not address MacKintrush's second point on appeal.

fact, standing alone, was innocuous. But these facts cannot be sealed off from one another and given the most charitable interpretation. Each fact must be viewed collectively and in context.

Moreover, each fact that the State presented was competent evidence of reasonable suspicion; many of these facts even fall within the statutory factors that the majority has outlined. For example, factor four (4) and factor thirteen (13) were present: whether the suspect was carrying anything, what he was carrying, and his efforts to conceal. Here, MacKintrush was carrying a package that smelled like dryer sheets. According to the postal inspector, who was trained in drug trafficking and had worked with the North Little Rock Police Department's Narcotics Division for at least seven years, dryer sheets are used as masking agents in the shipment of illegal drugs. One cannot deny the unique and recognizable odor of dryer sheets. What's more, the majority completely disregards the testimony about the inspector's experience.

Factor eight (8) was also present: the particular streets and areas involved. The postal inspector testified that a package sent to the same address had been intercepted before. In addition, neither MacKintrush nor the listed recipient appeared as residents at that location. Last, factor fourteen (14) was present—MacKintrush attempted to avoid identification by presenting himself as a different person when he signed for the package.

When we have found reasonable suspicion lacking in the past, the suspicious facts were much more tenuous. For example, in *Sims v. State*, we held that a prolonged stop was unjustified by reasonable suspicion when the motorist was nervous, sweating, and had recently been to Wal-Mart. 356 Ark. 507, 157 S.W.3d 530 (2004). We also said reasonable suspicion

was lacking in *Lilley v. State*, 362 Ark. 436, 208 S.W.3d 785 (2005). There, the car smelled like air freshener and the motorist was nervous, had a car-rental agreement for a one-way trip from California to Virginia, and was listed as an alternative driver on the rental agreement. We stated that "we are unwilling to condone a dog sniff following the conclusion of a traffic stop merely because someone is traveling through Arkansas in a rental car which smells of air freshener and that person appears nervous after being stopped by police officers." 362 Ark. at 444, 208 S.W.3d at 791.

The police had an even stronger case here, and, consistent with *Lilley*, the odor of a masking agent was not the only reason for the prolonged detention. Indeed, the facts outlined above, when considered together and in totality, gave law enforcement a coherent narrative of criminality: MacKintrush had illegal drugs shipped to an address where he did not live, directed to a recipient with a different name, and signed that person's name instead of his own when he picked up the package, which emitted the odor of a common masking agent. The evidence would not have supported an arrest warrant or a search warrant, but the law enforcement officers' decision to prolong the traffic stop to conduct a dog sniff wasn't based on conjecture or a hunch either. It was based on experience, expertise, and investigation. Put a different way, the facts and circumstances gave rise to a reasonable suspicion that MacKintrush was engaged in drug-related criminal activity. *See* Ark. R. Crim. P. 2.1. Law enforcement therefore had a legal justification to detain MacKintrush after the legitimate purpose of the traffic stop had ended.

BRILL, C.J., and WYNNE, J., join.
*John Wesley Hall* and *Sarah M. Pourhosseini*, for appellant.
*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.