DAVID M. GLOVER, Judge
Eric Rounds appeals from the sentencing order entered by the Pulaski County Circuit Court after a conditional plea of guilty. He challenges the court's denial of his motion to suppress. We reverse and remand.
On November 26, 2016, Rounds was stopped by Little Rock police officer, Sergeant Jeffrey Plunkett, and a firearm was found in Rounds's possession. He had a prior felony conviction from 2014 and was charged with unlawful possession of a firearm. Rounds sought to suppress the firearm, taking the position the stop was not justified, and therefore the firearm Sergeant Plunkett discovered during the search stemming from the stop should have been suppressed as the fruit of an unconstitutional warrantless stop. Following a hearing, the trial court denied Rounds's motion to suppress. He then entered a conditional plea of guilty on May 22, 2017, and this appeal followed.
In reviewing the denial of a motion to suppress evidence, the appellate courts of our state conduct a de novo examination based on the totality of the *405 circumstances. MacKintrush v. State , 2016 Ark. 14, 479 S.W.3d 14. We review findings of historical facts for clear error and determine whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. Id. A finding is clearly erroneous, even if there is evidence to support it, when after review of the entire evidence, we are left with a definite and firm conviction that the circuit court made a mistake. Id. We defer to the superiority of the circuit court to evaluate the credibility of the witnesses who testify at the suppression hearing. Id.
It is without dispute that Sergeant Plunkett, who made the stop, did not stop Rounds based on any traffic violation. Rather, he stopped Rounds based on what Sergeant Plunkett was told by fellow Little Rock police officer Irving Jackman. Our review of the entire evidence convinces us the circuit court erred in concluding the stop of Rounds's vehicle was based on reasonable suspicion, and because the stop was not justified, the evidence obtained as a result of the stop should have been suppressed.
At the suppression hearing, Officers Plunkett and Jackson testified. Officer Jackman testified first. He stated he had responded to a call on November 24, 2016, two days before the incident leading to Rounds's arrest. According to Officer Jackman, he heard shots on November 24 and responded to the area, which was known for its criminal activity and violence. Officer Jackman explained that when he made contact with Rounds on the 24th, Rounds informed him he had just been robbed. Officer Jackman testified that Rounds's personal items were on the ground; Rounds "had frantic breathing, and you could tell he had been in a high-stress situation"; he encouraged Rounds to report the incident; Rounds "advised it was fine"; and Rounds "did not necessarily say he would take care of it, would handle it, but [Rounds] did not want to make a report." Officer Jackman further testified that while he was talking to Rounds, "someone outside said he may be 'hot.' " Officer Jackman took those words to mean Rounds had an outstanding warrant, but because he was "the victim of this incident, it was not necessary to run him, to find out if he had a warrant. We try not to arrest victims of crime."
Officer Jackman testified that two days later, on November 26, while still assigned to the Violent Crime Reduction Task Force, "[w]e were saturating the area for the influx of shootings happening in the city. ... We were saturating the area in reference to a shots-fired call I believe, and once we got to the area I [saw] a black sedan, two-door Challenger, leaving the area. I was able to identify the driver." He explained that the driver was Rounds, who had been the victim of the November 24 robbery, "[a]nd then two days later [November 26] we responded to that area again in reference to some incidents that had been occurring throughout the city, and when I made it to that location, I [saw] Mr. Rounds's vehicle leaving the area." Officer Jackman then testified he "notified the squad that I was working on at that time that I had just [taken] a report with [Rounds] a couple days prior, just take precaution in case it was retaliation of some shots surrounding-somebody start shooting at him again, letting them know that he had just been shot at a few days prior." He stated that once someone is shot at, "most of the time a retaliation shooting is possible," and he provided that information to Sergeant Plunkett (the officer who stopped Rounds).
On cross-examination, Officer Jackman clarified his earlier testimony, explaining, "I got a call about shots being fired two *406 days prior to your client being arrested. We [were] saturating the areas in reference to the shots-fired calls. That happened on November 24, 2016." Officer Jackman explained that shots-fired calls happen on a regular basis and are not abnormal. He further clarified that someone had yelled out Rounds "was hot"; that the somebody was another individual on the street; that he did not pay that much attention to the other person because he (Jackman) was talking to Rounds; that he was not interested in the warrant then because he was more interested in finding the suspect who had done the shooting; and that Rounds did not want to be a victim in a report, so no further investigation was made of the November 24 incident.
Officer Jackman testified that when he passed Rounds in his vehicle on November 26, he remembered him from the November 24 incident, and he remembered an unidentified person had yelled Rounds was "hot." He explained that he informed the officers on the task-force-monitor channel that he (Jackman) was in the area; that he passed the vehicle of a person who had been robbed in that area two days earlier (Rounds); that he was going to continue to saturate the area; that someone had yelled the robbery victim (Rounds) was "hot," and he might therefore have an active warrant; and that he notified the officers to take precaution because Rounds was leaving the area where he had been robbed two days before. Officer Jackman stated that according to Sergeant Plunkett, the sergeant stopped Rounds to investigate a warrant based on Jackman's call. Officer Jackman explained he was telling the other officers to take precaution because they were in the area where Rounds had been robbed, and Rounds was leaving the area where he had been the victim two days earlier, and the police got calls about shots fired all the time. He thought it was unusual that Rounds had been a victim in that same area two days before and was leaving the same area two days later. Officer Jackman acknowledged he did not know if Rounds had family in the area. He said he advised the officers to take precaution, and Sergeant Plunkett decided to pull Rounds over based on the information he had given them, i.e., that Rounds was leaving the location, had been robbed two days earlier in the same location, and refused to make a report because someone advised that he was "hot." Officer Jackman stated that the only reason Sergeant Plunkett stopped Rounds was because he (Jackman) had reported Rounds might have a warrant. It is undisputed that Officer Jackman never determined whether Rounds actually had a warrant on November 24 or at any time before November 26.
Next, Sergeant Plunkett testified at the suppression hearing. He explained he was assigned to the Violent Criminal Apprehension Team on November 26, 2016; the team's duties included apprehending violent felons and responding to any violent-crime problems in the city; on the night in question they "were specifically assigned to target a few geographical areas based on the shots fired and the shootings that we had been having in the neighborhood"; there had been an increase in shootings in that area; and he was assigned to run a task force put together to suppress some of that violence.
Sergeant Plunkett, who actually conducted the stop of Rounds's vehicle, testified that on November 26, he received "information from Officer Jackman with regard to Eric Rounds [and] [b]ased on that information [he] conducted a traffic stop on the black Dodge Charger." He explained that he activated his blue lights; the Charger pulled to a stop; and he illuminated the vehicle with his spotlight. Sergeant Plunkett further testified that *407 Rounds, in fact, did not have an active warrant but that he "was at the scene where he was robbed ... and that, to me, led me to believe that he was possibly in that area to conduct a retaliation shooting."
On cross-examination, Sergeant Plunkett stated Rounds was not violating any traffic laws; that he did not recall Officer Jackman's exact words but recalled "him advising that Rounds was a convicted felon, and he was a victim of a robbery at that location, and he was possibly in the area to conduct a retaliation." The sergeant explained that he did not make an assumption; that he "used reasonable deduction" as to why Rounds might be there. He also acknowledged he did not know anything about Rounds except what Officer Jackman had told him, i.e., his criminal history and the fact that the other officer believed he had a warrant-which was based on what someone yelled out to Officer Jackman two days earlier when Rounds had been the victim of a robbery. He did not recall if Officer Jackman mentioned shots fired on November 26, but he was very familiar with the area and "shots fired" happened almost every day. Sergeant Plunkett had no personal knowledge that Rounds was the robbery victim in the November 24 incident. He stated: "The area was known for shootings. I said that Officer Jackman advised me that he had an active warrant, and that is why I stopped him. It was not that I stopped him for no reason. I had a whole host of reasons." He testified he conducted the traffic stop in under two minutes from the time he was notified by Officer Jackman. He acknowledged Rounds was not speeding and was not cited for any traffic violations. He further acknowledged he could have gotten specific information about whether Rounds actually had an arrest warrant before stopping him but did not do so.
At the conclusion of the suppression hearing, the trial court denied Rounds's motion, explaining:
I think the salient issue is that you have got an area where there are gunshots, there is retaliation. Law enforcement has been directed to that area to try to contain that violence. And shots were fired at Mr. Rounds, and he was robbed, and does not file a report, does not want to pursue it. And two days later is in that area, driving a car, regardless of whether he has a warrant or he is hot, and the officer reasonably believes that there is some connection between retaliation and the shots that were fired, and he stops him, and then notices that he is reaching and placing something in his car. And for his own safety, given the circumstances and knowing that this fella is a convicted felon, he sees the weapon, standing outside the car, so I think that there was a reasonable belief that that person should have been stopped. And once you see that movement, and for the officer's safety, I think it was a good search. I am going to deny the motion.
Rule 3.1 of the Arkansas Rules of Criminal Procedure provides in pertinent part:
A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.
(Emphasis added.) As our supreme court explained in MacKintrush , supra , the rule precisely states that the reasonable suspicion *408 must be tied to the commission of a felony or a misdemeanor involving forcible injury to persons or property. Rule 2.1 of the Arkansas Rules of Criminal Procedure defines "reasonable suspicion" as
a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.
In determining whether there is reasonable suspicion, we examine whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person may be involved in criminal activity. MacKintrush , supra. Arkansas Code Annotated section 16-81-203 (Repl. 2005) sets forth several factors to consider in determining whether a police officer has grounds to reasonably suspect someone. Those factors include, but are not limited to, the following:
(1) The demeanor of the suspect;
(2) The gait and manner of the suspect;
(3) Any knowledge the officer may have of the suspect's background or character;
(4) Whether the suspect is carrying anything, and what he or she is carrying;
(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;
(6) The time of the day or night the suspect is observed;
(7) Any overheard conversation of the suspect;
(8) The particular streets and areas involved;
(9) Any information received from third persons, whether they are known or unknown;
(10) Whether the suspect is consorting with others whose conduct is reasonably suspect;
(11) The suspect's proximity to known criminal conduct;
(12) The incidence of crime in the immediate neighborhood;
(13) The suspect's apparent effort to conceal an article; and
(14) The apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer.
Here, the trial court disregarded any active-warrant basis for the stop and focused instead on the "salient issue" of whether Rounds was in the area to retaliate for being robbed two days earlier, concluding that such a suspicion was reasonable. Viewing the testimony presented at the suppression hearing in its totality, we cannot agree.
When Officer Jackman saw Rounds on November 26, the only information he possessed was that Rounds had been a victim of a robbery in that same neighborhood two days earlier; that Rounds refused to make a report; that an unidentified person in the crowd said Rounds might be "hot"; that the neighborhood was known for shootings; and that shootings had increased in the neighborhood. In addition, Sergeant Plunkett acknowledged he made the stop within two minutes of hearing from Officer Jackman; Rounds was not speeding or engaging in any other traffic violations; and Sergeant Plunkett did not verify that Rounds had an active warrant, even though he could have done so.
It is unclear if the circuit court found as fact that the officers were in the area on November 26 responding to a specific *409 report of "shots fired." To the extent the circuit court did make such a finding, we are left with a definite and firm conviction that the court got that "historical fact" wrong. Our de novo review of the record in this case convinces us that on November 26, the officers were "saturating the area" because of a generalized increase in shootings in the area, not a specific "shots fired" report. Even if we had not found clear error with any finding of fact that the officers were responding to a specific "shots fired" report on November 26, we would still have trouble finding there was reasonable suspicion to believe that Rounds was in the area to retaliate. In the absence of such a particularized fact, it is impossible to arrive at this conclusion. There are as many unsuspicious reasons for Rounds refusing to make a report of the robbery on November 24 as there are suspicious reasons. Additionally, there are as many unsuspicious reasons as suspicious ones for Rounds to be driving in the same area two days after he had been robbed. We are further convinced by the totality of the circumstances that Sergeant Plunkett's actual reason for stopping Rounds was his reliance on Officer Jackman's report that Rounds might have an active warrant; however, under the circumstances presented here, that does not render the officer's suspicion reasonable. Basing a stop on the fact that Rounds was the victim of a robbery two days before, in a high-crime neighborhood, and an unidentified person had yelled that he might be "hot" (a claim never verified by the officers); that he had refused to make a report of that robbery; and that he had returned to the same neighborhood on November 26 does not satisfy the threshold for a reasonable suspicion that Rounds was going to retaliate for the earlier robbery.
The totality of these circumstances does not provide reasonable suspicion that Rounds was committing, had committed, or was about to commit a felony or a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property sufficient to justify a stop pursuant to Rule 3.1. In short, the evidence presented by the State did not demonstrate that the officers had specific, particularized, and articulable reasons to indicate Rounds was involved in criminal activity. Without reasonable suspicion that Rounds was involved in criminal activity, the stop made by Sergeant Plunkett was unconstitutional. Because we find that the stop was not justified, we hold that the trial court erred in denying Rounds's motion to suppress the firearm that was subsequently seized.
Reversed and remanded.
Vaught and Brown, JJ., agree.