Cite as 2020 Ark. App. 539

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–19–51

| | | |
|---|---|---|
| JAMES D. CRIBBS | | **Opinion Delivered** December 2, 2020 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR–16–3944] |
| V. | | |
| | | HONORABLE BARRY SIMS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## BART F. VIRDEN, Judge

James Cribbs appeals the sentencing orders entered by the Pulaski County Circuit Court in case No. CR-2016-3944, wherein he was convicted of fleeing and possession of heroin with the purpose to deliver, and in case No. CR-2016-3964, wherein he was convicted of possession of heroin with the purpose to deliver, possession of hydrocodone, and possession of marijuana. On appeal, Cribbs argues that the circuit court clearly erred in denying the motion to suppress he filed in case No. CR-2016-3944 because the police officer who initiated the traffic stop lacked probable cause. Cribbs also challenges the sufficiency of the evidence supporting his conviction of possession of heroin with the purpose to deliver in case No. CR-2016-3964. We affirm.

On October 23, 2017, the circuit court held a hearing on Cribbs's motion to suppress in case No. CR-2016-3944. At the hearing, North Little Rock police officer Ryan

Davidson testified that on September 15, 2016, he was working on a special unit that focuses on dealing with gang members, drug dealers, and violent offenders. Davidson said that while working in the same area with fellow officer Jeffery Elenbaas, he (Davidson) received a radio communication from Elenbaas reporting that he had observed a silver Chevrolet Impala traveling on 34th Street turn south onto Chandler Street without using a turn signal. Davidson stated that he saw the silver Impala as it turned from Chandler Street to 33rd Street. Davidson said he followed the Impala, turned on his blue lights, and tried to initiate a traffic stop based on the information provided to him by Elenbaas. However, the Impala sped away. Davidson turned on his siren and chased the Impala through a business area, but when the Impala turned into a residential area, Davidson discontinued his pursuit. Several blocks away Davidson saw a billow of white smoke coming from the now stopped Impala. As Davidson approached, he witnessed the driver of the Impala (later identified as Cribbs) jump out and run away. Davidson ran after Cribbs. Davidson saw Cribbs fall, pick something up, and try to conceal it. Davidson ordered Cripps to stop and grabbed him. Cribbs pulled away and continued to conceal something, so Davidson deployed his Taser on Cribbs twice, after which Cribbs complied with Davidson's orders. Davidson stated that other officers arrived, and they were able to arrest Cribbs. Davidson said he watched as a plastic baggie filled with 117 capsules was pulled out of Cribbs's mouth.[1]

Officer Jeffery Elenbaas of the North Little Rock Police Department testified that on September 15, he was surveilling a house known for narcotics activity. He said he

---

[1]The State later presented evidence from the chief forensic chemist at the Arkansas State Crime Laboratory confirming that the capsules in the baggie from Cribbs's mouth contained heroin and the cutting agent quinine and had a gross weight of 13.7465 grams.

watched a silver Impala at the house he was surveilling pull out of the yard, travel down 34th Street, and turn southbound onto Chandler Street without using a turn signal. Elenbaas testified that Davidson was closer to the Impala, so he radioed Davidson and reported the traffic violation. When Elenbaas arrived at the scene, he observed Cribbs expel the baggie of capsules from his mouth.

Following the testimony of Davidson and Elenbaas, Cribbs argued that the circuit court should grant his motion to suppress the heroin capsules found on Cribbs because Davidson did not have probable cause to stop Cribbs's vehicle. Specifically, Cribbs argued that Davidson, who initiated the stop, had no firsthand knowledge of the alleged traffic violation. Rather, all of Davidson's knowledge came from Elenbaas—a third-party. Cribbs contended that it is not proper for an officer to make a probable-cause determination based on events that took place outside of his presence.

The circuit court denied the motion to suppress in case No. CR–2016–3944 and proceeded with a bench trial in cases Nos. CR–2016–3944 and CR–2016–3964. The bench trial included the previously summarized suppression-hearing testimony along with new testimony. Elenbaas testified that on September 9, 2016, he was patrolling in downtown North Little Rock when he observed a tan Mercedes-Benz driving left of center. He tried to initiate a traffic stop, but the driver of the Mercedes fled onto the interstate. As the Mercedes sped away from Elenbaas, he was able to see its license–plate number, which was provided to other North Little Rock police officers.

Officer Scott Harton of the North Little Rock Police Department testified that he found the Mercedes at 12:30 a.m. on September 10 at a dead end on Young Road. Harton

3

stated that the engine was running and that there were two people in the vehicle: Cribbs in the driver's seat, and Portia Wine in the rear passenger seat. After Harton ordered them out of the car, Wine told Harton that she had a baggie of capsules in her vagina, and she gave it to him.[2] Harton said that Wine also advised him that there was marijuana[3] in the back-seat passenger-side-door compartment.

Officer Flippin of the North Little Rock Police Department testified that he assisted Harton and North Little Rock police sergeant John Lyon with the arrest of Cribbs and Wine on September 10. Flippin testified that when he patted Cribbs down, he found three pills in the left front pocket of Cribbs's pants.[4] Sergeant Lyon testified that an inventory search of Cribbs's vehicle was conducted after his arrest. Lyon stated that he found two prescription medicine bottles in the trunk.[5]

Wine, a codefendant in case No. CR-2016-3964, testified that on September 10, Cribbs picked her up at her home, and they went to a dead-end road in North Little Rock to have sex. She stated that they were in the back seat of the car when the police pulled up,

---

[2]Forensic chemist Lackey testified that there were nineteen capsules in this baggie. One contained "residue." She tested two of the other eighteen identical capsules, and the two capsules contained heroin and quinine. The eighteen capsules weighed 2.1093 grams. Lackey further testified that the heroin capsules from case No. CR-16-3944 and the heroin capsules in case No. CR-2016-3964 are similar in appearance.

[3]Lackey confirmed that the substance is marijuana and weighs 1.2001 grams.

[4]Lackey testified that the three pills are identifiable as hydrocodone and acetaminophen by their markings, and her testing confirmed this.

[5]Lackey testified that the liquid substance in one of the bottles is codeine and promethazine.

4

at which time she said Cribbs jumped into the front seat, threw a baggie in her lap, and told her to put it in her "private," which she did because she was scared. She testified that she thought the baggie contained marijuana. She said that the police officers told her that Cribbs said the drugs were hers, but she denied this.

At the conclusion of the bench trial, the circuit court found Cribbs guilty in case No. CR-2016-3944 of possession of heroin with the purpose to deliver and misdemeanor fleeing and sentenced him to concurrent sentences of ten years' imprisonment for the felony and one year in jail for the misdemeanor. The court also found Cribbs guilty in case No. CR-2016-3964 of possession of heroin with the purpose to deliver, possession of hydrocodone, and misdemeanor possession of marijuana and sentenced him to concurrent sentences of five years' imprisonment for each of the felony convictions and one year of probation for the misdemeanor conviction. This appeal followed.

For his first point on appeal, Cribbs argues that the circuit court clearly erred in denying his motion to suppress in case No. CR-2016-3944. In reviewing the circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Sims v. State*, 356 Ark. 507, 511–12, 157 S.W.3d 530, 533 (2004).

On appeal, Cribbs argues that Davidson lacked probable cause to initiate the traffic stop because he did not personally witness Cribbs's traffic violation; therefore, the traffic stop Davidson initiated was invalid, and the drugs found thereafter should have been

suppressed. In support of this argument, Cribbs cites *Rounds v. State*, 2018 Ark. App. 267, 550 S.W.3d 403. In *Rounds*, the appellant was stopped by a police sergeant who had been told by another officer that the appellant might have an active warrant. The other officer had heard from a bystander at the scene of the attempted robbery of the appellant two days prior that appellant might have an active warrant, and the officer never determined whether the appellant actually had a warrant. *Id*. at 5, 550 S.W.3d at 406. Our court held that the sergeant lacked reasonable suspicion that the appellant was involved in criminal activity, and without reasonable suspicion to support the stop, the circuit court clearly erred in denying the appellant's motion to suppress. *Id*. at 10–11, 550 S.W.3d at 409.

Cribbs's reliance on *Rounds* is misplaced. First, *Rounds* was based on an Arkansas Rule of Criminal Procedure 3.1 reasonable-suspicion analysis and did not involve a traffic violation of any sort. Second, *Rounds* does not stand for the proposition that firsthand observations or information of one police officer cannot be imputed to another officer as argued by Cribbs. In *Rounds*, our court held that the sergeant did not have reasonable suspicion to stop the appellant on the basis of the inaccurate and unconfirmed information the sergeant received and relied on from another officer. When the officer relayed to the sergeant that the appellant had an active warrant, the officer did not know that this was true, and it was not. In contrast, in the case at bar, when Elenbaas relayed to Davidson that Cribbs had committed a traffic violation, Elenbaas knew it to be true because he had personally witnessed it.

In order for a police officer to make a traffic stop, the officer must have probable cause to believe that the vehicle has violated a traffic law. *Sims*, 356 Ark. at 512, 157 S.W.3d

6

at 533. Probable cause is defined as facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *Laime v. State*, 347 Ark. 142, 153, 60 S.W.3d 464, 472 (2001). In assessing the existence of probable cause, our review is liberal rather than strict. *Id.*, 60 S.W.3d at 472. In *Sims*, our supreme court held that the officer's traffic stop was constitutionally valid because the officer observed that the vehicle the defendant was driving had violated traffic laws. *Sims*, 356 Ark. at 512, 157 S.W.3d at 533–34. In the instant case, there is no question that Elenbaas had probable cause to stop Cribbs. The question is whether Elenbaas's probable cause can be imputed to Davidson.

While not in the context of a traffic stop, the Arkansas Supreme Court has approved the collective-knowledge doctrine and imputed the knowledge of one officer to another when determining whether there is sufficient probable cause to arrest and/or search a suspect. In *Johnson v. State*, our supreme court stated that probable cause is to be evaluated from the collective information of the police department and not merely on the personal knowledge of the arresting officer. 249 Ark. 208, 211, 458 S.W.2d 409, 411 (1970) (citing *Jones v. State*, 246 Ark. 1057, 441 S.W.2d 458 (1969); *Williams v. United States*, 308 F.2d 326 (D.C. Cir. 1962)). The court further held that a police radio report reciting a sufficient description can be adequate grounds upon which to base probable cause for an arrest. *Id.* at 211, 458 S.W.2d at 411 (citing *Theriault v. United States*, 401 F.2d 79 (8th Cir. 1968)).

In *Johnson*, employees of a Piggly Wiggly gave the police a description of two people who had just robbed the store, and a bystander gave the police the license-plate number of the getaway car. These details, coupled with a description of the getaway car, were heard

7

by a state trooper, who saw the vehicle and radioed ahead. A roadblock was set up, and a different police officer stopped the vehicle and subsequently found the defendant and his partner in the trunk. Our supreme court affirmed the denial of the appellant's motion to suppress holding that the arresting officer who had been informed of the license number of the automobile in which the robbers drove away, and who had an accurate description of the vehicle as well as of the appellant and his partner both of whom were discovered in the trunk of the car, had probable cause for arrest. *Johnson*, 249 Ark. at 212, 458 S.W.2d at 411.

The collective-knowledge doctrine was also applied in *Jones v. State*, where one of the appellant's points on appeal was that his conviction should be set aside because his arrest was not based on a warrant or probable cause. Multiple law enforcement officers were involved in the investigation, and appellant argued that even if some of the officers had reasonable grounds for making the arrest, the arresting officer did not. The supreme court disagreed, holding that knowledge and information gained by the officers were interchanged among them. *Jones*, 246 Ark. at 1066, 441 S.W.2d at 464. The court also held that probable cause is to be evaluated by the courts on the basis of the collective information of the police (which may consist partially of hearsay) rather than that of only the officer who performs the act of arresting. *Id.*, 441 S.W.2d at 464 (citing *Smith v. United States*, 358 F.2d 833, 835 (D.C. Cir. 1966), *cert. denied*, 386 U.S. 1008 (1967); *see also State v. Fioravanti*, 215 A.2d 16 (N.J. 1965); *United States v. Ventresca*, 380 U.S. 102 (1965)).

The Eighth Circuit has applied the common-knowledge doctrine in the context of a traffic stop. In *United States v. Thompson*, 533 F.3d 964 (8th Cir. 2008), the appellant moved to suppress evidence on the basis of an invalid traffic stop. The appellant argued that

a drug-task-force officer who participated in the traffic stop of the appellant's vehicle did not see the traffic violation that was the basis for the stop and instead relied on the report of the city police officer who witnessed the appellant cross the center line. *Thompson*, 533 F.3d at 968–69. In holding that the stop was valid, the Eighth Circuit stated, "'[I]t is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" *Thompson*, 533 F.3d at 969 (citing *United States v. Lyons,* 486 F.3d 367, 371 (8th Cir. 2007) (quoting *United States v. Barry*, 98 F.3d 373, 376 (8th Cir.1996)). The court further stated that the collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers. *Id.* (citing *United States v. Williams*, 429 F.3d 767, 771–72 (8th Cir. 2005)).

Returning to the case at bar, the evidence demonstrated that Davidson and Elenbaas were working together on the same special unit, they were working in the same vicinity, and they were in communication with one another. Elenbaas testified that he witnessed Cribbs commit a traffic violation, which provided Elenbaas probable cause to initiate a traffic stop of Cribbs's vehicle. Under the common-knowledge doctrine, the probable cause Elenbaas had to initiate a traffic stop on Cribbs was imputed to Davidson. Therefore, we hold that the circuit court did not clearly err in denying Cribbs's motion to suppress in case No. CR-2016-3944.[6]

---

[6]Under his first point on appeal, Cribbs also raises the argument that Davidson did not have reasonable suspicion under Arkansas Rule of Criminal Procedure 3.1 to make the

For his second point on appeal, Cribbs challenges the evidence supporting his conviction for possession of heroin with the purpose to deliver in case No. CR-16-3964. Although Cribbs moved for a directed verdict at trial, the motion was actually a motion for dismissal because it was a bench trial, not a jury trial. Ark. R. Crim. P. 33.1(b) (2020). A motion to dismiss, identical to a motion for a directed verdict in a jury trial, is a challenge to the sufficiency of the evidence. *Turner v. State*, 2010 Ark. App. 214, at 3.

At trial, Cribbs argued that in case No. CR-16-3964, the State failed to present evidence from any police officer linking Cribbs to the baggie of heroin capsules that Wine had in her possession, that Wine was the only witness who testified that the baggie of drugs belonged to Cribbs, and that the court "can weigh the testimony." However, on appeal, Cribbs's arguments have changed substantially. He now argues that the State did not prove that he possessed heroin with the purpose to deliver by showing any of the six factors listed in Arkansas Code Annotated section 5-64-424(a) (Repl. 2016) and that the testimony of his codefendant, Wine, contradicted that of the officers and that she had motive to testify against Cribbs.

In order to preserve a challenge to the sufficiency of the evidence for appeal from a bench trial, the issue must be articulated clearly and specifically to the circuit court in a motion to dismiss so that the circuit court will have the opportunity to either grant the motion or, if justice requires, allow the State to reopen its case and supply the missing proof. *Cox v. State*, 2019 Ark. App. 192, at 4, 575 S.W.3d 134, 137 (citing *Lamb v. State*, 372 Ark.

---

traffic stop; however, this argument was not raised below and is, therefore, not preserved for appeal. *Bynum v. State*, 2018 Ark. App. 201, at 8, 546 S.W.3d 533, 539–40.

10

277, 279, 275 S.W.3d 144, 146 (2008)). A further reason that the motion must be specific is that the appellate court may not decide an issue for the first time on appeal and cannot afford relief that is not first sought in the circuit court. *Lamb*, 372 Ark. at 279, 275 S.W.3d at 146. A party may not change or expand his or her arguments on appeal; an appellant is limited to the scope and nature of the arguments made below. *Cox*, 2019 Ark. App. 192, at 4–5, 575 S.W.3d at 137 (citing *Lamb*, 372 Ark. at 279, 275 S.W.3d at 146). Because Cribbs did not raise the section 5-64-424(a) argument at trial, it is not preserved for appeal.

To the extent that Cribbs's sufficiency argument calls into question the credibility of Wine's testimony, that argument is preserved; however, it lacks merit. Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *Patton v. State*, 2010 Ark. App. 453, at 3 (citing *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003)).

Wine testified that when the police arrived, Cribbs threw a baggie (that a chemist confirmed contained eighteen heroin capsules) at her and told her to put it in her "private." In finding Cribbs guilty of possession of heroin with the purpose to deliver in case No. CR–16-3964, the circuit court specifically stated, "I find Ms. Wine completely credible." This court does not weigh the evidence presented at trial, as that is a matter for the fact-finder; nor do we assess the credibility of the witnesses. *Worsham v. State*, 2017 Ark. App. 702, at 5, 537 S.W.3d 789, 793.[7] We hold that sufficient evidence supports this conviction.

---

[7]We also note that Lackey testified that the baggie of heroin capsules (retrieved from Cribbs's mouth) from case No. CR–16-3944 and the baggie of heroin capsules (that Wine turned over to police officers) in case No. CR-2016-3964 are similar in appearance.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Josh Q. Hurst*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.